UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

_Jacksonville_ Division

## CIVIL RIGHTS COMPLAINT FORM

Christopher Carl Korslund, II
(#J50919)

CASE NUMBER: 3:14-cv-395-J-32PDB
(To be supplied by Clerk's Office)

(Enter full name of each Plaintiff and
prison number, if applicable)

v.

John Doe Police Officer #1, (I.D. 5437)

John Doe Police Officer #2, (I.D. 7483)

in their individual and

official capacities

(Enter full name of each Defendant.
If additional space is required, use the
blank area directly to the right).

### ANSWER ALL OF THE FOLLOWING QUESTIONS:

I. PLACE OF PRESENT CONFINEMENT: Santa Rosa Correctional Institute - Annex
(Indicate the name and location)
5850 East Milton Road, Milton, FL 32583

II. EXHAUSTION OF ADMINISTRATIVE REMEDIES: **Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.**

III. PREVIOUS LAWSUITS:

DC 225 (Rev 2/2012)   1

2.

A. Have you initiated other lawsuits in state court dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof?   Yes ( )   No (✓)

B. Have you initiated other lawsuits in <u>federal court</u> dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof?   Yes ( )   No (✓)

C. If your answer to either A or B is YES, describe each lawsuit in the space provided below. If there is more than one lawsuit, describe all additional lawsuits on a separate piece of paper, using the same format as below.

   1. Parties to previous lawsuit:

     Plaintiff(s): N/A

     Defendant(s): N/A

   2. Court (if federal court, name the district; if state court, name the county):
     N/A

   3. Docket Number: N/A

   4. Name of judge: N/A

   5. Briefly describe the facts and basis of the lawsuit: N/A

   6. Disposition (Was the case dismissed? Was it appealed? Is it still pending?): N/A

   7. Approximate filing date: N/A

   8. Approximate disposition date: N/A

D. Have you initiated lawsuits or appeals from lawsuits in federal court that have been dismissed as frivolous, malicious or for failure to state a claim upon which relief may be granted? If so,

3.

    identify these suits below by providing the case number, the style, and the disposition of each case:    N/A

IV.    **PARTIES**: In part A of this section, indicate your full name in the first blank and your full mailing address in the second blank. Do the same for each additional Plaintiff named in the Complaint (if any) in part B of this section:

    A.    Name of Plaintiff: CHRISTOPHER KORSLUND, DC # J50919.

           Mailing address: SANTA ROSA CORRECTIONAL Institution Annex, 5850 E. Milton Road, Milton, FLORIDA 32583

    B.    Additional Plaintiffs: N/A

In part C of this section, indicate the **full name** of the first named Defendant. Also, fill in his or her mailing address, position, and where he or she is employed. For any additional Defendants, use parts D through G of this section for the names, addresses, positions and places of employment:

    C.    Defendant: One (1) Unknown Police Officer (DEFENDANT "#1)

           Mailing Address: 501 E. Bay Street, Jacksonville, FL 32202

           Position: Police Officer

           Employed at: Jacksonville SHERIFF'S OFFICE

    D.    Defendant: One (1) Unknown Police Officer (DEFENDANT "#2)

           Mailing Address: 501 E. Bay Street, Jacksonville, FL 32202

DC 225 (Rev 2/2012)           3

4.

Position: Police Officer

Employed at: Jacksonville Sheriff's Office

E. Defendant: _____

Mailing Address: _____

_____

Position: _____

Employed at: _____

F. Defendant: _____

Mailing Address: _____

_____

Position: _____

Employed at: _____

G. Defendant: _____

Mailing Address: _____

_____

Position: _____

Employed at: _____

5.

## I. JURISDICTION & VENUE

JV1.) This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The Court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3). Plaintiff seeks declatory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunctive relief (if any) are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure.

JV2.) The Middle District of Florida (U.S. District Court) is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occurred.

## II. PLAINTIFF(S)

P1.) Plaintiff, Christopher Carl Korslund, II, was in the process of being arrested by the Jacksonville, Florida Sheriff's Department at the time of all incidents mentioned. He is currently confined at Santa Rosa Correctional Institute - Annex in Milton, Florida.

## III. DEFENDANTS

D1.) Defendant, [John Doe Police Officer #1], is a Police officer with the Jacksonville Sheriff's Department in Jacksonville, Florida. He had the presumed authority to act as an agent of, under State, County and/or Municipal law, and to exercise necessary force to restrain and/or arrest the plaintiff within the confines of the United States Constitution, Federal law and State law.

D2.) Defendant, [John Doe Police Officer #2], is a Police officer with the Jacksonville Sheriff's Department in Jacksonville, Florida. He had the presumed authority to act as an agent of, under State, County and/or Municipal law, and to exercise necessary force to restrain and/or arrest the plaintiff within the confines of the United States Constitution, Federal law and State law.

D3.) The Defendant(s) are sued individually and in their official capacity. At all times mentioned in this Complaint the defendant's acted under the color of State law.

D4.) Plaintiff reserves the right to Amend this Complaint to include Addt'l defendants (individuals or entities) and to clarify the identities of defendants.

7.

## IV. EXHIBITS

The following exhibits are included as supporting evidence in this claim:

8.

## V. STATEMENT OF FACTS

The Plaintiff hereby swears that the following is a true and correct recollection of any events that gave rise to this claim.

1.) On April 25, 2012 at approximately 1:30 pm, Plaintiff, Christopher Carl Korslund, II was ambushed by several members of an assault team with the Jacksonville Sheriff's Department. This was a surprise operation giving rise from a supposed ongoing investigation by the J.S.D., and Korslund had no knowledge that any investigation(s) regarding [him] existed at this time. The ambush was tactical, yet seemed unorganized and chaotic to Korslund.

The J.S.D. members first encountered MR. Korslund as he rounded the back corner of a friend's home on Magnolia Street.

The first Officer that Korslund saw was Defendant John Doe Police Officer #1, hereafter referred to as (JDPO1) for recognition in this brief. The officer (JDPO1) was approximately 15 feet from the corner of the house, standing, with a firearm aimed directly at the Plaintiff's head.

Immediately, and instinctively, MR. Korslund surveilled the surrounding area, noticing several other Officers, including John Doe Police Officer #2, hereafter referred to as (JDPO2) for recognition in this brief, standing nearby with weapons drawn, including several assault rifles.

(JDPO1) immediately ordered MR. Korslund to, "Get

9.

on the ground!"

At this time, MR. Korslund became disoriented, scared, shocked and confused by the multitude of officers in his presence and the fact that they were all pointing deadly weapons at him. Many of them also began screaming commands of their own; some of which contradicted the commands of (JSPO1).

For example, MR. Korslund remembers hearing one command to "Turn around and raise his hands into the air", while another said to "Get up against the wall".

Because of this non-structured "chaotic" environment brought on in just seconds, and the fear of a "trigger-happy" police officer possibly ending [his] life right then and there, MR. Korslund simply stood perfectly still. [He] did not make "any" movements or efforts to run or resist the police.

The unorderly commands continued for just a brief moment more, when all of a sudden (JDPO1) "Roundhouse Kicked" MR. Korslund, striking him on the hip with extreme force. As MR. Korslund was falling to the ground (JDPO1) also grabbed [him] and forcibly slammed [him] into the ground face first.

When MR. Korslund impacted the solid ground, (JDPO1) then began repeatedly kicking [him] in the side and stomach area, as Korslund tried to ball up to protect himself from the viscious blows from the officers foot.

At this time, while MR. Korslund continued to try to protect himself from this unnecessary and egregious assault, (JDPO2) jumped on top of MR. Korslund and drove his knee into the temple area of [his] head. (JDPO2) then placed handcuffs onto MR. Korslund while

he continued to pin [his] face into the dirt.

Mr. Korslund did not resist the arrest, during the brutality.

Upon being handcuffed, and now lying face down on the ground, both (JAPO1) and (JAPO2) continued to kick the plaintiff with extreme force in and around the midsection of his body, including, but not limited to [his] ribcages, kidneys and the soft-tissue areas between his hips and ribs-sternum area.

When the bludgeoning finally stopped, one of the officers (I believe it was (JAPO1)) picked me up off of the ground and told me, "You're lucky I didn't kill you!"

Mr. Korslund, although badly beaten by the two officers, was then escorted to a patrol car and transported to a police station. [He] was too scared at this time to speak up and inform the officers that he thought he needed medical attention, for fear of further aggressive and brutal treatment.

However, while at the police station, and once custody of Mr. Korslund was transferred over to Detectives for questioning, Korslund immediately informed the attending Detective that he had been severly beaten by the police officers who arrested him. This occurred while the Detectives were cleaning Mr. Korslund up in a bathroom and tending to his superficial wounds.

At this time, Mr. Korslund felt "numb" all over his midsection, so it was impossible for [him] to know the extent of his internal wounds.

Mr. Korslund remained in the custody of the Detectives for several hours, during questioning, and at no time was he in the company of any other "detainees" or other "civilians."

11.

The Detectives interrogated MR. Korslund, under duress and threats before finally arresting him there on the spot. The Detectives (Scott and Simpson) then personally escorted MR. Korslund (on foot), next door to the County jail (Pre-trial detention center).

MR. Korslund went through "intake" and "booking" on the 1st floor, with no contact with any other inmates.

After the booking deputy finger-printed MR. Korslund, the deputy placed [him] in a "holding cell" by himself.

Approximately one-hour after arriving at the jail (in the holding cell), MR. Korslund began having severe pain in his abdominal region, and shortly thereafter in his chest (heart) area.

MR. Korslund immediately advised the officer that was present that "something is wrong with my heart. I need to see the nurse!" The deputy refused to acknowledge MR. Korslund's request.

Several minutes later MR. Korslund once again pleaded with the attending deputies to allow him to seek medical attention.

Finally, although obviously displeased with having to do so, they took MR. Korslund down a hallway to see a Nurse.

Upon arriving at the health screening office, a Nurse (who was interviewing another inmate) told MR. Korslund to sit in a chair. [He] immediately informed the Nurse that he was having severe chest pain. She [Nurse] stopped what she was doing and took MR. Korslund's vital signs, and informed [him] that he was "fine". MR. Korslund pleaded with her about his condition, over and over until she finally instructed him to be escorted, by the

12.

Corrections Deputy, to the Medical Floor.

At this time, MR. Korslund was having "shortness of breath" and his vision was "fading". MR. Korslund describes his surroundings, visually as "having a sparkly gold tint" to it.

At this time MR. Korslund remembers hearing the medical staff referring to his condition, stating:

"His pupils are dialating in and out.", so they asked him what drugs he had taken. MR. Korslund informed them that he had not taken any drugs. [They] accussed MR. Korslund of lying to them.

At this time MR. Korslund began to lose consciousness, and the staff responded by using an "Amonia Cracker" to his nose to keep him conscious. [He] heard someone say that "He is turning purple and grey."

At this time, the medical staff placed MR. Korslund onto a gurney and waited for an ambulance to arrive. Once placed in to the ambulance, the paramedic told MR. Korslund he was "full of shit", "nothing's wrong with you" and "you're just trying to get out of jail".

MR. Korslund arrived at the hospital, and a doctor did an immediate ultrasound on [his] abdomen, and informed MR. Korslund that there was "internal bleeding". At this point, MR. Korslund lost consciousness.

When MR. Korslund awoke (date and time unknown), he felt considerable pain in his abdomen. Upon pulling up his hospital gown, he was shocked to find Thirty-Four (34) staples going up his abdomen and stomach area.

At this time the Nurse informed MR. Korslund that [they] had been left with no choice but to remove [his] spleen. She also told MR. Korslund that he had suffered a "Stage 4 embolism" which she stated "most people do not survive".

MR. Korslund remained in the Hospital, shackled at

13.

four points to the bed, for approximately Twelve (12) days before being transferred to the County Jail again. This would have been Approximately 10:00 pm, on or around, May 6th, 2012.

Throughout MR. Korslund's stay at the hospital, he was treated for wound care and kept under close observation. He was also prescribed medicine for pain and specifically "Zoloft" for severe depression (which he still suffers from).

Upon arriving back at the County Jail, MR. Korslund was sent to the 6th Floor and placed into a "suicide watch" cell. He was given a dirty jumpsuit almost 6 sizes too large for him, and NOTHING else; not even a mattress or blanket. MR. Korslund continually asked for these items, but was refused each and every time.

The following day, MR. Korslund was transferred to a non-lockdown (non-confinement) "mental health" dormitory, for almost a month to 5 weeks. [He] was prescribed "Hydrocodone" 5mg (3x daily) for his pain and had to remain on "bloodthinning" medicine for several weeks to prevent blood clots from forming in his system. He was removed from Zoloft medication and instead put on "Elevil"(sp) for anxiety.

MR. Korslund still suffers from extreme anxiety and post-traumatic stress caused from the brutal beating he took at the hands of (JDPO1) and (JDPO2).

MR. Korslund has since gone to prison and is currently at Santa Rosa Correctional Institute in Milton, FL, where he continues to suffer physical pain, emotional distress, anxiety and other sleep disorders associated with the traumatic event he suffered through.

14.

## CONCLUSION

C1.) In the instant case, the Plaintiff, Mr. Christopher Carl Korslund, II, claims that while acting under color of state at all times mentioned in the foregoing complaint, John Doe Police Officer #1 (JDPO1) and John Doe Police Officer #2 (JDPO2) acted with deliberate indifference to any policy, procedure or standards of law enforcement when they brutally attacked and kicked the plaintiff both before restraining him (with handcuffs) and even after plaintiff was helpless and defenseless. This attack also violated plaintiffs rights, immunities and privileges secured by the Constitution and laws of the United States of America.

Each officer should be sued personally and in their official capacities, as employees of the Jacksonville Sheriff's Department and the privileges given them by the State of Florida.

## EXHAUSTION OF LEGAL REMEDIES

E1.) Plaintiff, Christopher Carl Korslund, II, is not legally afforded any grievance procedures in this matter by the Department (Jacksonville Sheriff's Department), nor the Circuit or State Courts.

## LEGAL CLAIMS

L1.) Plaintiff realleges and incorporates by reference all paragraphs preceding this one in the complaint.

L2.) The violations by Defendants #1 and #2 violated plaintiff, Korslund's, rights and constituted several Constitutional violations of the United States Constitution and its laws.

23.) The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be physically, emotionally, spiritually and mentally (psychologically) irreparably injured by the conduct of the defendants unless this Court grants the declaratory, injunctive, compensatory and punitive relief which plaintiff seeks.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this Court enter judgement granting plaintiff:

PR1.) A declaration that the acts (and/or omissions) described herein violated plaintiff's rights under the Constitution and laws of the United States.

PR2.) A preliminary and permanent injunction ordering John Doe Police Officer #1 and John Doe Police Officer #2 and the Jacksonville Sheriffs Department (office) to discontinue the use of excessive force, by and through the means of kicking defenseless individuals before and especially after they are restrained in handcuffs. Such activity is vindictive, malicious, unfounded, improper and constitutes "abuse" of power, and violates the Constitutional Rights of an individual under the Eight Amendment.

PR3.) Compensatory damages in the amount of $8,000,000.00/xx for loss of body parts (spleen), physical injury, pain and suffering and loss of Spiritual "Shakra", against John Doe Police Officer #1, Defendant.

PR4.) Compensatory damages in the amount of $8,000,000.00/xx for loss of body parts (spleen), physical injury, pain and suffering and loss of spiritual "Shakra", against John Doe Police Officer #2, defendant.

PR5.) Punitive damages in the amount of $12,000,000.00/xx against John Doe Police Officer #1, defendant.

PR6.) Punitive damages in the amount of $12,000,000.00/xx against John Doe Police Officer #2, defendant.

PR7.) Plaintiffs costs in this suit.

PR8.) Any additional relief this court deems just, proper and equitable, for this matter in which plaintiff suffered brutality at the hands of government employees sworn to protect and serve and a lifetime of pain, suffering and emotional distress caused by these barbaric individuals.

## JURY DEMAND

J1.) Plaintiff request a jury trial by right.

Signed this 2nd day of April, 2014

/s/ Chris Korshund

Christopher Carl Korshund, II

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 04-02-2014

/s/ Chris Korshund

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Signed this 2nd day of April, 2014.

*Chris Korshima(?)*

(Signatures of all Plaintiffs)

**IF MAILED BY PRISONER:**

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one): ☒ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail on: the 2nd day of April, 2014.

DC 225 (Rev 2/2012)