UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRISTOPHER CARL KORSLUND,
    Plaintiff,

v.                                        Case No.: **3:14-CV-395-J-32 PDB**

JOHN H. RUTHERFORD, AND
M. L. DOHERTY (I.D. 5437), IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY, AND
N. BURGUS, (I. D. 7483), IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY, AND
JACKSONVILLE SHERIFF'S OFFICE, AND
THE COUNTY OF DUVAL, FLORIDA
    Defendant.
_____/

## AMENDED
## CIVIL RIGHT'S COMPLAINT FORM

PLACE OF PRESENT CONFINEMENT: Santa Rosa Correctional Institute – Annex, 5850 East Milton Road, Milton, Florida 32583

PREVIOUS LAWSUITS:



JUL 2 8 2014

1

A. Have you initiated other lawsuits in state court dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof? Yes ( ) No (X)

B. Have you initiated other lawsuits in <u>Federal Court</u> dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof? Yes ( ) No (X)

C. If you answer to either A or B is YES, describe each lawsuit in the space provided below. If there is more than one lawsuit, describe all additional lawsuits on a separate piece of paper using the same format as below.

 1. Parties to previous lawsuit:
    Plaintiff(s): <u>N/A</u>
    Defendant(s): <u>N/A</u>

 2. Court (if federal court, name the district; if state court, name the county): <u>N/A</u>

 3. Docket Number: <u>N/A</u>

 4. Name of judge: <u>N/A</u>

 5. Briefly describe the facts and basis of the lawsuit: <u>N/A</u>

 6. Disposition (Was the case dismissed? Was it appealed? Is it still pending?):

 7. Approximate filing date: <u>N/A</u>

 8. Approximate disposition date: <u>N/A</u>

D. Have you initiated lawsuit or appeals from lawsuits in federal court that have been dismissed as frivolous, malicious or for failure to state a claim upon which relief may be granted? If so, identify these suits below by providing the case numbers, the style, and the disposition of each case: <u>N/A</u>

A. Plaintiff (s): Christopher Korslund, DC# J50919
Santa Rosa Correctional Institution Annex, 5850
East Milton Road, Milton, Florida 32583

B. Additional Plaintiffs: N/A

## DEFENDANTS :

C. M.L. Doherty (I.D. 5437)
Mailing address: 501 East Bay Street, Jacksonville, FL 32202
Position: Police Officer
Employed at: Jacksonville Sheriff's Office

D. N. Burgos (I.D. 7483)
Mailing address: 501 East Bay Street, Jacksonville, FL 32202
Position: Police Officer
Employed at: Jacksonville Sheriff's Office

E. Jacksonville Sheriff's Office
Mailing address: 501 East Bay Street, Jacksonville, FL 32202
Position: N/A
Employed at: Duval County, FL

F. the County of Duval (Florida)
Mailing address: (Unknown)
Position: Florida County
Employed at: N/A

G. John H. Rutherford
Mailing address: 501 East Bay Street, Jacksonville, Fl, 32202
Position: Sheriff
Employed at: Jacksonville Sheriff Office

3

# I. JURISDICTION AND VENUE

JV1) This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of State law, of rights secured by the Constitution of the United States. The Court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a) (3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunctive relief (if any) are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure, and by 28 U.S.C. § 1367 for the State law claims.

JV2) The Middle District of Florida (U.S. District Court) is an appropriate venue under 28 U.S.C. Section 1391 (b) (2) because it is where the events giving rise to this claim occurred.

## II. Plaintiff (s)

P1) Plaintiff, Christopher Carl Korslund, II, (Korslund), was in the process of being arrested by the Jacksonville, Florida Sheriff's Department at the time of all incidents mention. He is currently confined at Santa Rosa Correctional Institute Annex in Milton, Florida.

## III. Defendants

D1) Defendant, M.L. Doherty (I.D. 5437), (Doherty) is a police officer, with the Jacksonville Sheriff's Department in Jacksonville, Florida. He had the presumed authority to act as an agent of, under state, county and/or municipal law, and to exercise necessary force to restrain and/or arrest the plaintiff within the confines of the United States Constitution, Federal Law and State Law.

D2) Defendant, N. Burgos (I.D. 7483), (Burgos), is a police officer with the Jacksonville Sheriff's Department in Jacksonville, Florida. He had the presumed authority to act as an agent of, under state, county and/or municipal law, and to exercise necessary force to restrain and/or arrest the plaintiff within the confines of the United State Constitution, Federal Law and State Law.

D3) Jacksonville Sheriff's Office (501 East Bay Street, Jacksonville, Florida 32202)

D4) Duval County, Florida

D5) John H. Rutherford, Sheriff of the Jacksonville Sheriff's office.

D6) The Defendant(s) are sued individually and in their official capacity. At all times mentioned in this complaint the defendants acted under the color of the State Law.

D7) Plaintiff reserves the right to amend this complaint to include additional defendants (individuals or entities) when more facts and other persons become known that may have culpability to these allegations. Plaintiff gives notice that defendants shall preserve all evidence related to the allegations herein that may be related in the third degree of relation. Any doubt as to the determination of relevancy shall be construed in favor preservation of the evidence.

## IV. Statement of Facts

The Plaintiff hereby swears that the following is a true and correct recollection of any events that gave rise to this claim, and this statement of facts is pled with particularity as required by Rule 26 (a) (1) (A) (i)- (iv), Fed. R. Civ. P. (2014), that specifically requires the answering party to provide to the plaintiff, the name, address, and telephone number of each individual likely to have discoverable information relevant to the disputed facts alleged in this complaint that the disclosing party may use to support it claims or defenses.

1). On April 25, 2012 at approximately 1:30 P.M., Plaintiff, Christopher Carl Korslund, II was ambushed by several members of an assault team with the Jacksonville Sheriff's Office. This was a surprise operation giving rise from a supposed ongoing investigation by the J.S.O., and Korslund had no knowledge that any investigation(s) regarding [him] existed at this time. The ambush was tactical, yet unorganized and seemed chaotic to Korslund.

The J.S.O. members first encountered Mr. Korslund as he rounded the back corner of a friend's home on Magnolia Street.

The first officer that Korslund saw was defendant, M.L. Doherty, hereafter referred to as (Doherty) for recognition in this brief. The officer, Doherty, was approximately 15 feet from the corner of the house, standing, with a firearm aimed directly at the Plaintiff's head.

Immediately, and instinctively, Mr. Korslund surveilled the surrounding area, noticing several other officers, including officer #2, Defendant N. Burgos, hereafter referred to as (Burgos) for recognition in this belief, standing nearby with weapons drawn, including several assault rifles.

(Doherty) immediately ordered Mr. Korslund to "Get on the ground!"

At this time, Mr. Korslund became disoriented, scared, shocked and confused by the multitude of officers in his presence and the fact that they were all pointing deadly weapons at him. Many of them also began screaming commands of their own; some of which contradicted the commands of Doherty.

For example, Mr. Korslund remembers hearing one command to "Turn around and raise his hands into the air," while another said to "Get up against the wall."

Because of this non-structured "chaotic" environment brought on in just seconds, and the fear of a "trigger- happy" police officer possibly ending [his] life right then and there, Mr. Korslund simply stood perfectly still. [He] did not make "any" movements or efforts to run or resist the police.

The unorderly commands continued for just a brief moment more, when all of a sudden Doherty advanced on and "Roundhouse <u>kicked</u>" Mr. Korslund, [Exhibit "B"] striking him on the hip with extreme force. As Mr. Korslund was falling to the ground Doherty also grabbed [him] and forcibly slammed [him] into the ground face first.

When Mr. Korslund impacted the solid ground, Doherty then began repeatedly kicking [him] in the side and stomach area, as Mr. Korslund tried to ball up to protect himself from the viscous blows from the officer's foot.

At this time, while Mr. Korslund continued to try to protect himself from this unnecessary and egregious assault, Burgos jumped on top of Mr. Korslund and drove his knee into the temple area of [his] head. [Exhibit "C"]. An officer then placed handcuffs onto Mr. Korslund while he was pinned down and was still face down in the dirt.

Defendants Doherty and Burgos, despite Mr. Korslund being secured and unable to defend himself, also kicked Mr. Korslund several times in both of his sides, while he was laying prone, with his arms handcuffed behind his back and defenseless. [Exhibit "A-2"] [Exhibit "A-6"]

After Defendants Doherty and Burgos ceased their assault, they picked Mr. Korslund up off the ground, standing him onto his feet. Defendant Doherty then said to Mr. Korslund sarcastically, " You're lucky I didn't kill you!" Doherty then escorted Mr. Korslund to the street and an awaiting squad car where Mr. Korslund was transported to the police station for questioning.

After arriving, Detective Scott escorted Mr. Korslund to the bathroom to clean the dirt and blood off of his face that he had received after being slung to the ground and pinned by defendant Burgos' knee.

Mr. Korslund told Detective Scott that he had been beaten by the police officers who had arrested him, but Detective Scott seemed uninterested in the issue. Detective Scott then escorted Mr. Korslund to the investigation room where he was interrogated for several hours.

The Detective interrogated Mr. Korslund, under duress and threats before finally arresting him there on the spot. The Detectives (Scott and Simpson) then personally escorted Mr. Korslund (on foot), next door to the county jail (pre-trial detention center).

Mr. Korslund went through "intake" and "booking" on the 1st floor, with <u>no physical contact with any other inmates.</u>

After the booking deputy finger-printed Mr. Korslund, the deputy placed [him] in a "holding cell" <u>by himself.</u>

Approximately one hour after arriving at the jail (in the holding cell), Mr. Korslund began having severe pain in his abdominal region, and shortly thereafter in his chest (heart) area. [Exhibits "A-15", "A-17" and "A-14"]

Mr. Korslund immediately advised the officer that was present that "something is wrong with my heart. I need to see the nurse!" the deputy refused to acknowledge Mr. Korslund's request.

Several minutes later Mr. Korslund once again pleaded with the attending deputies to allow him to seek medical attention.

Finally, although obviously displeased with having to do so, they took Mr. Korslund down a hallway to see a nurse.

Upon arriving at the health screening office, a Nurse (who was interviewing another inmate) told Mr. Korslund to sit in a chair. [He] immediately informed the nurse that he was having severe chest pain. She [nurse] stopped what she was doing and took Mr. Korslund's vital signs, and informed [him] that he was "fine." Mr. Korslund pleaded with her about his condition, over and over until she finally instructed him to be escorted, by the Corrections Deputy, to the medical floor.

At this time, Mr. Korslund was having "shortness of breath" and his vision was "fading." Mr. Korslund describes his surroundings, visually as "having a sparkly gold tint" to it.

8

At this time Mr. Korslund remembers hearing the medical staff referring to his condition, stating:

"His pupils are dilating in and out." So they asked him what drugs he had taken. Mr. Korslund informed them that he had not taken any drugs. [They] accused Mr. Korslund of lying to them.

At this time Mr. Korslund began to lose consciousness, and the staff responded by using an "Ammonia Cracker" to his nose to keep him conscious. [He] heard someone say that "He is turning purple and grey."

At this time, the medical staff placed Mr. Korslund onto a gurney and waited for an ambulance to arrive. Once placed into the ambulance, the paramedic told Mr. Korslund he was "full of shit," "nothing's wrong with you" and "you're just trying to get out of jail."

Mr. Korslund arrived at the hospital and a doctor did an immediate ultrasound on [his] abdomen and informed Mr. Korslund that there was "active internal bleeding." At this point Mr. Korslund lost consciousness. [Exhibit "A-27"] and "A-6"]

When Mr. Korslund awoke (date and time unknown), he felt considerable pain in his abdomen, upon pulling up his hospital gown, he was shocked to find thirty-four (34) staples going up his abdomen and stomach area. [Exhibits "A-27", "A-28"] ["A-22"]

At this time the nurse informed Mr. Korslund that [they] had been left with no choice but to remove [his] spleen. She also told Mr. Korslund that he had suffered a "stage 4 embolism" which she stated "most people do not survive." He had also sustained 2 fractured ribs. [Exhibit "A", Page 22]

Mr. Korslund remained in the hospital, shackled at four points to the bed [Exhibit "A-8", "A-11"] for approximately twelve (12) days before being transferred to the county jail again. This would have been approximately 10:00 PM, on or around, May 6th, 2012. [Exhibit "A-3"]

Throughout Mr. Korslund's stay at the hospital, he was treated for wound care, pneumonia, other complications, and kept under close observation. [Exhibits

"A-3" and "A-8"]. He was also prescribed medicine for pain and specifically "Zoloft" for severe depression and anxiety (Which he still suffers from).

Upon arriving back at the county jail, Mr. Korslund was sent to the 6th floor and placed into a "suicide watch" cell. He was given a <u>dirty</u> jumpsuit almost 6 sizes too large for him, and nothing else; not even a mattress or blanket. Mr. Korslund continually asked for these items, but was refused each and every time.

The following day, Mr. Korslund was transferred to a non-lockdown (non-confinement) "mental health" dormitory, for almost a month to 5 weeks. [He] was prescribed "Hydrocodone" 5 mg (3x daily) for his pain and had to remain on "blood thinning" medicine for several weeks to prevent blood clots from forming in his system. He was removed from <u>Zoloft</u> medication and instead put on "Elevil" for anxiety. [Exhibit "A-3"]

Mr. Korslund still suffers from extreme anxiety and post-traumatic stress caused from the brutal beating he took at the hands of Doherty and Burgos.

Mr. Korslund has since gone to prison and is currently at Santa Rosa Correctional Institute in Milton, Florida, where he continues to suffer physical pain, emotional distress, anxiety and other sleep disorders associated with the traumatic event he suffered through. He continues with aftercare (physical, lab work, and psychological).

## V. Conclusion

C1) In the instant case, the plaintiff, Mr. Christopher Carl Korslund, II, claims that while acting under color of state at all times mentioned in the forgoing complaint, defendants Doherty and Burgos acted with deliberate indifference to any policy, procedure or standards of law enforcement when they brutally attacked and kicked the plaintiff both before restraining him (with handcuffs) and even after plaintiff was helpless and defenseless. This attack also violated plaintiff's rights, immunities and privileges secured by the Constitution and laws of the United States of America.

Each officer should be sued personally and in their official capacities, as employees of the Jacksonville Sheriff's Office and the privileges given them by the State of Florida.

## VI. Exhaustion of Legal Remedies

E1). Plaintiff, Christopher Carl Korslund, II, is not legally afforded any grievance procedures in this matter by the Department (Jacksonville Sheriff's Office), nor the Circuit or State Courts.

## VII. Legal Claims

L1). Plaintiff realleges and incorporates by reference all paragraphs preceding this one in this complaint.

L2). The violation by defendants Doherty and Burgos violated plaintiff, Korslund's, rights and constituted several Constitutional violations of the United States Constitution and it's law .
[U.S.C.A. Const. Amendments 4, 8 and 14].

L3). The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein, plaintiff has been and will continue to be physically, emotionally, spiritually and mentally (psychologically) irreparably injured by the conduct of the defendants unless this court grants the declaratory, injunctive compensatory and punitive relief which plaintiff seeks.

## VIII. Prayer for Relief

WHEREFORE, plaintiff respectfully prays that this court enter a judgment granting plaintiff:

PR1) A declaration that the acts (and/or omissions) described herein violated plaintiffs rights under the Constitution and laws of the United States.

PR2) A preliminary and permanent injunction ordering defendant M.L. Doherty and defendant N. Burgos and the Jacksonville Sheriff's Department (office) to discontinue the use of excessive force, by and through the means of kicking defenseless individuals before and especially after they are restrained in handcuffs. Such activity is vindictive, malicious, unfounded, improper and constitutes "abuse" of power, and violates the Constitutional Rights of an individual.

PR3) Compensatory damages against each defendant M.L. Doherty, N. Burgos, John H. Rutherford, Jacksonville Sheriffs Office, Duval County, in an amount exceeding $800,000.00 for physical injury, loss of future earning capacity, future medical expenses, future surgeries, future doctor visits, medications, transportation expenses, jointly and severally.

PR4) Compensatory non-economic damages against each defendant; M.L. Doherty John H. Rutherford, N. Burgos, Jacksonville Sheriffs Office, Duval County, FL., in an amount exceeding $500,000.00, for loss of body parts (Spleen), physical injury, pain and suffering, mental anguish, emotional distress, humiliation, embarrassment, anxiety and loss of spiritual "Chakra," pursuant to the provisions of the "Impact Rule," jointly and severally.

PR5) Punitive and exemplary damages against each defendant; M.L. Doherty, N. Burgos, John H. Rutherford, Jacksonville Sheriffs Office, Duval County FL, in a amount exceeding $5,000,000.00, jointly and severally, for defendants' intentional misconduct, gross negligence, actual knowledge of the wrongfulness of the intentional misconduct, reckless and wanton disregard and deliberate indifference to the life, safety, and rights of plaintiff.

PR6) Pre-judgment and post-judgment interest on damages awarded against all defendants, at the average monthly or yearly legal rate as determined by the Florida Department of Banking and Finance Website compounded quarterly from period beginning on date of plaintiff's injury through date of entry of judgment.

PR7) Plaintiffs' cost in this suit.

PR8) Any additional relief this court deems just, proper and equitable, for this matter which plaintiff suffered brutality at the hands of government employees sworn to protect and serve, and a lifetime of pain, suffering, physical scarring and emotional distress caused by defendants.

## IX. Jury Demand

J1) Plaintiff requests a jury trial by right, on all issues triable by jury.

Signed this 28 day of July, 2014.

/s/ *Chris Korslund*
Christopher Carl Korslund, II

CERTIFICATION AND OATH

**UNDER THE PENALTIES OF PERJURY I CERTIFY**, that: I, understand English, have read the foregoing motion or it has been read to me and I understand its contents; the motion is filed in good faith and with a reasonable belief that it is timely filed, has potential merit, and does not duplicate previous motions that have been disposed of by the court; and the facts contained in the motion are true and correct.

On this 28th day of July, 2014.

/s/ *Chris Korslund*
Christopher Carl Korslund, II


**IF MAILED BY PRISONER:**

I declare (or certify, verify, or affirm) under penalty of perjury that his complaint was (check one):

☑ Delivered to a prison official  or

☐ Deposited in the prison's internal mail on: the 28th day of July, 2014.

/s/ *Chris Korslund*
Christopher Carl Korslund, II

## X. Exhibits

The following exhibits are included as supporting evidence in this claim:

"A" – Shands Medical Records (Part 1): (28 Pages)

"B"- M.L. Doherty, Jacksonville Sheriff's Office Supplemental Report, Incident No. 233142, Sup. #4: (2 Pages)

"C" – N. Burgos, Jacksonville Sheriff's Office Supplemental Report, Incident No. 233142, Sup. #3: (2 Pages)